**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FEDERAL DEPOSIT INSURANCE CORPORATION , as receiver for Colonial Bank,**

    **Plaintiff,**

v.                                           Case No.  8:12-cv-1813-T-30TBM

**DIANA PEARL, an individual, d/b/a Pearl Appraisal Services,**

    **Defendant.**
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Defendant's Second Motion to Dismiss Amended Complaint of Plaintiff and Second Motion for More Definite Statement (Dkt. 12), Defendant's Request for Oral Argument (Dkt. 13), Plaintiff's Response in Opposition to Defendant's Second Motion to Dismiss Amended Complaint and Second Motion for More Definite Statement (Dkt. 18), Defendant's First Supplement and Amendment to Memorandum of Legal Authority (Dkt. 19), Plaintiff's Response in Opposition to Defendant's First Supplement and Amendment to Memorandum of Legal Authority (Dkt. 20), and Plaintiff's Unopposed Motion to Extend Fact Discovery Deadline (Dkt. 26).  The Court, having reviewed the motions, responses, and being otherwise advised in the premises, concludes the motion to dismiss and motion for a more definite statement should be denied and the motion to extend fact discovery should be granted.

# BACKGROUND[1]

In its amended complaint, Plaintiff Federal Deposit Insurance Corporation, as Receiver for Colonial Bank ("FDIC-R"), alleges three counts against Defendant Diana Pearl, an individual doing business as Pearl Appraisal Services ("Pearl"): breach of contract as a third party beneficiary ("Count I"), negligent misrepresentation ("Count II"), and professional negligence ("Count III").

Colonial was a state chartered savings bank with its principal place of business in Montgomery, Alabama. Colonial was in the business of, among other things, funding mortgage loans. On August 14, 2009, Colonial was closed by the Alabama State Banking Department and the FDIC-R was appointed as receiver pursuant to 12 U.S.C. § 1821. The claims which are the subject of this suit were retained or transferred to the FDIC-R.

In February 2007, Pearl contracted with VanDyk Mortgage Company ("VanDyk") to prepare a written Uniform Residential Appraisal Report for the real property located at 3801 East Bay Drive, Unit #110, Holmes Beach, Florida ("property"). The appraisal prepared by Pearl valued the property at $950,000 as of February 11, 2007. The appraisal was later submitted to Taylor, Bean & Whitaker Mortgage Corp. ("TBW") for the purpose of facilitating a mortgage refinance transaction for borrower Jerry Cipolla. The amended complaint does not specify who submitted Pearl's appraisal to TBW.

---

[1]For purposes of the motion to dismiss, the Court accepts as true the allegations in the amended compliant. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

TBW used its assignment of trade line of credit at Colonial to fund the loan. At the time TBW funded the loan using Colonial's line of credit, TBW assigned and transferred to Colonial any and all claims against Pearl in connection with the loan and appraisal. The FDIC-R did not attach any contract or agreement between either VanDyk and TBW or between TBW and Colonial, but did allege that both TBW and Colonial were intended third party beneficiaries under the appraisal agreement, which was attached to the amended complaint.

The FDIC-R alleges that the appraisal was negligently prepared and contained material misrepresentations. Specifically, the FDIC-R alleges that Pearl "cherry-picked properties [that] were inappropriate to use as comparables for the Property. Defendant's selection of these inappropriate properties enabled her to artificially inflate the market value of the property in the Appraisal."

The FDIC-R alleges that TBW, in reliance on the appraisal, funded the loan in the amount of $570,000, which was secured by the property. The FDIC-R also alleges that the property's market value was far less than $950,000 at the time TBW funded the loan and, had TBW known the true market value, it would not have funded the loan. The FDIC-R, as a successor in interest to TBW, claims Pearl's conduct caused it to suffer damages in the form of a "severely under-secured mortgage loan."

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When

reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  On the contrary, legal conclusions "must be supported by factual allegations." *Id.*  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  "In order to survive a 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

Federal Rule of Civil Procedure 12(e) provides that "[if] a pleading to which a responsive pleading is allowed [] is so vague or ambiguous that the party cannot reasonably prepare a response[,]" the party may move for a more definite statement before interposing a responsive pleading.  Fed. R. Civ. P. 12(e).  However, motions for a more definite statement are disfavored. *Bennett Eng'g Grp., Inc. v. Ashe Indus., Inc.*, 2011 WL 3516133, *3 (M.D. Fla. Aug. 11, 2011); *see Campbell v. Miller*, 836 F. Supp. 827, 832 (M.D. Fla. 1996).  The pleading requirements of the Federal Rules are very liberal and a short and plain statement of the claim will suffice. *Morales v. Zenith Ins. Co.*, 2010 WL 2293199, *3 (M.D. Fla. June 8, 2010).

## DISCUSSION

### I.     Count I: Breach of Contract - Third Party Beneficiary

Florida law does not allow a person who is not a party to a contract to sue for breach of that contract if the person merely receives an incidental or consequential benefit from the contract. *Intercostal Realty, Inc., v. Tracy*, 706 F. Supp. 2d 1325, 1329 (S.D. Fla. 2010) (quoting *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030-31 (Fla. 4th DCA 1994)). However, an intended third party beneficiary may maintain a breach of contract action against a party that breaches the contract. *Id.* In order to state a cause of action, a plaintiff must plead the following elements:

> (1) a contract between A and B;
> (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs);
> (3) breach of that contract by either A or B (or both); and
> (4) damages to C resulting from the breach.

*Id.*

To find the requisite intent, a plaintiff must show that both contracting parties intended to benefit the third party. *Id.* Florida law looks to the "nature or terms of a contract" to find the parties' clear or manifest intent that it "be for the benefit of a third party." *Jenne v. Church & Tower, Inc.*, 814 So. 2d 522, 524 (Fla. 4th DCA 2002). "The intention of the contracting parties, gleaned from the contract itself, is determinative." *City of Tampa v. Thornton-Tomasetti, P.C.*, 646 So. 2d 279, 282 (Fla. 2d DCA 1994).

Pearl argues that Count I should be dismissed on several grounds.  First, Pearl asserts that the FDIC-R failed to allege "privity of contract between Colonial Bank, an Alabama corporation, and Defendant Pearl."  Because privity of contract is not one of the elements necessary for an intended third party beneficiary to state a cause of action for breach of a contract, this argument fails.

Pearl next argues that the contract between Pearl and VanDyk was not intended to primarily and directly benefit either TBW or Colonial because the agreement specified that the intended user was "the lender/client," which was VanDyk.  Pearl also alleges TBW and Colonial were not intended beneficiaries of the contract because Pearl had no actual knowledge that either would rely upon her appraisal.  This argument fails based on the certifications found in the appraisal agreement.

The appraiser's certification number 23, which is alleged to be part of the agreement between Pearl and VanDyk, states that "[t]he borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties."[2]  This contract language arguably creates a right for members of this class of persons to rely upon Pearl's representations and is sufficient for a fact finder to conclude it is an expression of intent by the parties to directly benefit this class of persons.  *See Intercostal Realty, Inc.*,

---

[2]Appraiser's certification number 21 also gives the lender/client the right to disclose or distribute the appraisal report to this class of persons without obtaining the appraiser's consent.

706 F. Supp. 2d at 1329-30 (finding an express right was created in favor of a third party beneficiary under a purchase option in a lease agreement where the agreement entitled the beneficiary to a commission of the total purchase price if lessee purchased the home from the lessor); *cf. Caretta*, 647 So. 2d at 1031-32 (finding no third party contractual rights for owner of yacht where complaint merely alleged that paint supplier knew the paint purchaser intended to use paint on customers' hulls); *Jenne*, 814 So. 2d at 525 (finding no third party contractual rights for sheriff when the contract between the county and contractor made no mention of sheriff and sheriff pointed only to negotiations and dealings between the parties).

At the motion to dismiss stage, the FDIC-R need only allege it is a member of the class intended to directly benefit under the contract. The FDIC-R does exactly that:

> By the express terms of the appraisal agreement, lenders (the mortgagee and/or successors and assigns) such as TBW and Colonial were the intended beneficiaries of the agreement; indeed, Defendant expressly certified in the Appraisal that secondary market participants, such as TBW and Colonial may rely on the appraisal report.

Dkt. 10, Am. Compl., ¶ 24. Accepting these allegations as true, as the Court must for purposes of a motion to dismiss, the FDIC-R has properly alleged a breach of contract as a third party beneficiary. If Pearl wishes to dispute whether TBW and Colonial actually are members of this class of intended beneficiaries, she may raise this issue in a motion for summary judgment after discovery has been conducted.

Finally, as to all three counts, Pearl argues that the FDIC-R has failed to allege "any bodily injury or property damages" so that any damages alleged are "wholly speculative" and that the FDIC-R has failed to allege that Pearl's conduct was the proximate cause of any

damages suffered by the FDIC-R.[3]  All that is necessary is a short and plain statement of the facts entitling a party to relief.  Fed. R. Civ. P. 8(a).  The FDIC-R has alleged that it has suffered damages "arising from funding a severely under-secured mortgage loan" as a "direct and proximate result of Defendant's material breaches of the appraisal agreement."[4]  Under the liberal pleading requirements of the Federal Rules of Civil Procedure, these allegations are sufficient.  If discovery shows that Pearl was not the proximate cause or that the FDIC-R has only suffered speculative damages because there has been no default or otherwise certain damages, Pearl may revisit these arguments in a motion for summary judgment.

## II.     Count II:  Negligent Misrepresentation

Pearl moves to dismiss Count II for negligent misrepresentation on the grounds that the economic loss rule prevents the FDIC-R from bringing a claim for negligent misrepresentation because the FDIC-R alleges that the parties are in privity with each other.  Presumably, Pearl objects to the FDIC-R pleading alternative causes of action, Count I in contract and Count II and III in tort.  This argument fails.

"[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are

---

[3]The Court assumes Pearl's objection to the lack of "bodily injury or property damages" relates to Pearl's economic loss rule argument.  As discussed *infra* Section II., the economic loss rule is inapplicable to the three causes of action alleged in the amended complaint.

[4]The FDIC-R alleges "as a direct and proximate result of Defendant's material mispresentations" in Count II and "as a direct and proximate result of the foregoing negligence" in Count III.  The alleged damages are the same in each count: "a severely under-secured mortgage loan."

economic losses." *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2006). Economic losses are essentially "disappointed economic expectations" that may arise from "inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits - without any claim of personal injury or damage to other property." *Casa Clara Condo. Ass'n, Inc., v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993). The Florida Supreme Court has previously stated that the general "prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Indem. Ins. Co. of N. Am.*, 891 So. 2d at 536. Thus, historically, parties in contractual privity with one another were barred from bringing tort claims for economic losses.

Subsequent to Pearl's motion to dismiss and the FDIC-R's response, the Florida Supreme Court limited the application of the economic loss rule to products liability cases. *Tiara Condo. Ass'n v. Marsh & McLennan Cos., Inc.*, –So. 3d –, 2013 WL 828003, at *1 (Fla. Mar. 7, 2013). Based on the original purpose of the economic loss rule and for policy considerations, the Florida Supreme Court decided to "recede from [their] prior rulings to the extent that they have applied the economic loss rule to cases other than products liability." *Id.* at *7.

As an initial matter, Rule 8(d) permits a party to plead inconsistent or alternative theories of liability. *See Manicini Enters., Inc., v. Am. Express Co.*, 236 F.R.D. 695, 698-99 (S.D. Fla. 2006). Therefore, the FDIC-R is entitled to plead two inconsistent causes of action

arising out of the same facts, one resounding in contract and two in tort, without running afoul of the Federal Rules of Civil Procedure.

More important, the Florida Supreme Court has drastically curtailed the application of the economic loss rule in its recent decision so that it undoubtedly has no relevance to the claims arising out of Pearl's appraisal report. *Tiara Condo. Ass'n*, 2013 WL 828003, at *7. Additionally, the Court notes that the economic loss rule historically has never barred traditional tort claims such as professional negligence or fraud. As such, even prior to the recent Florida Supreme Court opinion, the economic loss rule would not have barred the FDIC-R's claims in Count II and III. Thus, Pearl's motion to dismiss Count II on the basis of the economic loss rule is denied.

## III.  Count III:  Professional Negligence

Pearl moves to dismiss Count III for professional negligence on the basis that, even if she is a professional within the statutory meaning, the claim is barred by the statute of limitations.[5]  This argument fails because Pearl mistakes the two-year statute of limitations found in Florida Statutes § 95.11(4)(a) as the controlling law.

Under 12 U.S.C. § 1821(d)(14)(A), "the applicable statute of limitations with regard to any action brought by the [FDIC-R] as conservator or receiver shall be . . . (ii) in the case of any tort claim . . . the longer of - (I) the 3-year period beginning on the date the claim

---

[5] Pearl "concedes for the purposes of this motion only, that she was, at the time of the making of the subject Appraisal, a 'professional.'" The Court notes that Florida law defines an "appraiser" as "any person who is a registered trainee real estate appraiser, a license real estate appraiser, or a certified real estate appraiser. An appraiser renders a professional service and is a professional with in the meaning of § 95.11(4)(a)." Fla. Stat. § 475.611(1)(h).

accrues; or (II) the period applicable under State law." Section 1821(d)(14)(b) defines the date on which a claim accrues as the later of "(i) the date of the appointment of the [FDIC-R] as conservator or receiver; or (ii) the date on which the cause of action accrues."

The amended complaint alleges that the FDIC-R was appointed as receiver of Colonial on August 14, 2009. The original complaint was filed on August 10, 2012, falling within the three-year period following the FDIC-R's appointment as receiver of Colonial. Thus, the FDIC-R brought the original complaint within the applicable statute of limitations and Pearl's argument about Florida law is unavailing.

### IV.    Motion for More Definite Statement

Pearl seeks a more definite statement with respect to all three counts because of the "dearth of allegations . . . of any nexus, causal connection or contract between Defendant Pearl and any entity other than VanDyk." Pearl essentially is asking for the FDIC-R to explain how the appraisal was transferred from VanDyk to TBW and to provide more explanation of how it was assigned to Colonial. Although the Court agrees that the amended complaint is less than illuminating on how FDIC-R is a successor to a third party beneficiary, the FDIC-R is not required to provide details at this stage in the litigation. The amended complaint is not so vague or ambiguous as to prevent Pearl from responding. Indeed, Rule 8(b)(5) allows a party to respond that it lacks knowledge of an allegation with the same effect as a denial.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant's Second Motion to Dismiss Amended Complaint of Plaintiff and Second Motion for More Definite Statement (Dkt. 12) is DENIED.

2. Defendant's Request for Oral Argument (Dkt. 13) is DENIED as moot.

3. Defendant shall file an answer to Plaintiff's amended complaint within fourteen (14) days of the date of this Order.

4. Plaintiff's Unopposed Motion to Extend Fact Discovery Deadline (Dkt. 26) is GRANTED. Fact discovery is due by June 20, 2013. All other deadlines remain unchanged.

**DONE** and **ORDERED** in Tampa, Florida on April 8, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2012\12-cv-1813.mtdismiss.frm